Bissell, J.
We are not entirely clear respecting our obligations to *314 counsel in the matter of the form and. extent of this decision, though we are satisfied that the parties will have no cause to complain with the very narrow and limited expression of our views about their rights and about the judgment. Beasley brought suit against the First National Bank of Longmont to cancel or remove a cloud on the title which he had to some land in Boulder county. The transactions involved were dealings between himself and his daughter, Mrs. Key. As is frequently the case where a father and his children have dealings, little attention was paid to the business or to the legal modes ordinarily adopted. In 1881 Beasley sold Mrs. Key 160 acres of land in that county. He made a deed to it, and Mrs. Key and her husband went to live on the farm. After living on it for a time she either sold or traded it for an interest in a milling property. Neither Mrs. Key nor her husband had paid for it at the time of this sale, and on settlement in 1886 either one or both of them paid Beasley the interest which had accrued on the consideration, which was $1,600, and enough of the principal so that there was a total payment of $600 on the purchase price, leaving $1,000 due. This ran along unsettled for some time, and afterwards Beasley concluded to make some provision for his children. He deeded another piece of property of 120 acres to Mrs. Key, which was estimated to be worth $500 more than the sum which he undertook to give each child. This then left $500 and the $1,000 due on the purchase price of the original farm, with the interest on it from the date of that transaction unpaid. Mrs. Key and her husband lived on the property until the husband died in December, 1895. In January, 1896, Mrs. Key redeeded this 120 acres to her father to liquidate the debt which she owed on the purchase of the original farm and its interest and the amount which was due, according to the arrangement made by the father to give each child property of the value of $8,500. The amount of the supposed debt at the time that the property was deeded back to Beasley was assumed "to be about $2,500, which was made up of the $1,500 principal sum due, *315 and ten per. cent interest on the $1,000 unpaid on the first purchase, which was the agreed rate of interest between the parties at the time the first farm was sold. Within a short time from the date of this deed from Mrs. Key to her father the Bank of Longmont brought a suit by attachment against Mrs. Key on a promissory note which she with her husband had executed to the bank, and on which they had advanced the money. It would appear from the record that the husband had bought an interest or right in what is called the Kitchen Cabinet Company, and given a note for $300, either directly to a man by the name of Sutphen, or to some other person from whom it came into Sutphen’s hands. When that note became due Sutphen went to the farm to enforce its collection. There is some conflict in the evidence in regard to what Sutphen did, the parties to whom he went, the means he took and the plans he pursued to enforce the collection. It gave rise to some friction, but it resulted in the signing of a note by Mrs. Key with her husband which the bank very readily took and advanced the money, as she was supposed to be responsible and the Sutphen paper was thereby taken care of. The suit of the bank proceeded to judgment and they sold the property, and it was to remove the cloud made by the attachment and resulting sale that this action was begun. The bank defended, and the issue made up concerned the bona fides and regularity of the transaction between Beasley and his daughter, with the further element occasioned by the circumstance that after Mrs. Key had made the deed to her father, he permitted her to go back on the farm and make such living out of it as she could, he apparj ently furnishing help and water to enable her to run it.
This statement is enough to indicate the general nature of the suit and the character of the evidence. The appeal is predicated on one hypothesis and one only, according to the briefs of appellant’s counsel, that upon the testimony produced and the case made by the plaintiff Beasley, the district court ought not to have entered a judgment establishing his title. The decree is attacked on this ground. *316 We are not unmindful of the fact that counsel suggest that the subsequent permission given by Beasley to his daughter to live on the farm exhibits the creation of a trust for the benefit of the grantor, but we see no element of trust in the transaction, nor do we regard the statute as applicable. There is nothing in the evidence to indicate that there was any such agreement between the parties that any right, interest or privilege was reserved to Mrs. Key, either directly or indirectly, which was enforceable, or would have been if the whole transaction had been put in writing. It therefore lacks all those legal elements which create a trust and make the transaction obnoxious to the statute. Counsel requests each member of the court to read the testimony, and each for himself conclude whether the decree can be upheld. The request of counsel has been heeded, and I am very frank to state that while the testimony is not in all particulars entirely satisfactory, and while possibly, there might arise in the mind of any lawyer a lurking suspicion that the transaction between Beasley and his daughter was one for the protection of the daughter’s interest, and to avoid what was claimed to be an unjust debt wrongfully incurred, we are wholly unable to find in the record evidence on which we have a right to conclude against the judgment of the trial court that such was the fact. In cases of this sort which are determinable by an ascertainment of whether the acts of the parties are entirely fair and free from wrong or fraudulent purposes, and by a consideration not only of what the witnesses may say, but of their manner, method and appearance on the stand, we do not feel at liberty to disturb the finding of the trial court where there is evidence to sustain it. If we were thoroughly and completely of the opinion that the court had erred in its conclusions, and did not find in the record evidence on which the decree might be sustained, we would not hesitate to overturn the judgment and give the parties another trial. This does not appear to be such a case, and although it may work hardship and occasion a loss to the appellant, we do not see our way clear to reverse the judg *317 ment. It seems to us that our duty is wholly discharged by this very brief expression of our conclusions, and that we are not called on to make an argument to explain the reasons on which the trial court probably based it's finding, or those which we could adduce to support it. There is evidence to sustain the judgment, and we do not think we would be justified in disturbing the conclusion.
The decree and judgment will accordingly be affirmed.

Affirmed.